IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS

| | |
|---|---|
| RICKEY VICE, *on behalf of himself and all others similarly situated*, )<br>)<br>Plaintiff, )<br>)<br>vs. )<br>)<br>AMERICAN RECEIVABLES AGENCY, LLC, )<br>)<br>Defendant. )<br>) | Case No.<br><br>**CLASS ACTION COMPLAINT AND JURY DEMAND** |

## NATURE OF ACTION

1. Plaintiff Rickey Vice ("Plaintiff") brings this class action on behalf of himself and all others similarly situated against Defendant American Receivables Agency, LLC ("Defendant") pursuant to the Fair Debt Collection Practices Act ("FDCPA"), 15 U.S.C. § 1692 *et seq*.

## JURISDICTION, VENUE, AND STANDING

2. This Court has jurisdiction pursuant to 15 U.S.C. § 1692k(d) and 28 U.S.C. § 1331.

3. Venue is proper before this Court pursuant to 28 U.S.C. § 1391(b), where the acts and transactions giving rise to Plaintiff's action occurred in this district, where Plaintiff resides in this district, and where Defendants transact business in this district.

4. Congress is "well positioned to identify intangible harms that meet minimum Article III requirements," thus "Congress may 'elevat[e] to the status of legally cognizable injuries concrete, *de facto* injuries that were previously inadequate in law.'" *Spokeo, Inc. v.*

1

*Robins*, 136 S. Ct. 1540, 1549, 194 L. Ed. 2d 635 (2016) (quoting *Lujan v. Defs of Wildlife*, 504 U.S. 555, 578 (1992)).

5. "Without the protections of the FDCPA, Congress determined, the '[e]xisting laws and procedures for redressing these injuries are inadequate to protect consumers.'" *Lane v. Bayview Loan Servicing, LLC*, No. 15 C 10446, 2016 WL 3671467, at *3 (N.D. Ill. July 11, 2016) (quoting 15 U.S.C. § 1692(b)). Thus, a debt collector's breach of a right afforded a consumer under the FDCPA causes an injury in fact for Article III standing, even where the harm may be intangible. *See id.*; *Church v. Accretive Health, Inc.*, 654 F. App'x 990, 995 (11th Cir. 2016).

## THE FAIR DEBT COLLECTION PRACTICES ACT

6. Congress enacted the FDCPA to "eliminate abusive debt collection practices, to ensure that debt collectors who abstain from such practices are not competitively disadvantaged, and to promote consistent state action to protect consumers." *Jerman v. Carlisle, McNellie, Rini, Kramer & Ulrich LPA*, 559 U.S. 573, 577 (2010) (citing 15 U.S.C. § 1692(e)).

7. To protect consumers and ensure compliance by debt collectors, "the FDCPA is a strict liability statute." *Johnson v. Riddle*, 305 F.3d 1107, 1122 (10th Cir. 2002).

8. The FDCPA is a "remedial statute," and so "should be construed liberally in favor of the consumer." *Riddle*, 305 F.3d at 1117.

9. "A single violation of the FDCPA is sufficient to state a claim." *Soren v. Equable Ascent Fin., LLC*, No. 2:12-CV-00038, 2012 WL 2317362, at *2 (D. Utah June 18, 2012) (citing *Taylor v. Perrin*, 103 F.3d 1232, 1238 (5th Cir.1997)). "Plaintiffs who prove a

2

violation of the FDCPA are entitled to statutory damages irrespective of the ability to prove actual damages." *Id.*

10. Whether a collection letter violates the FDCPA is assessed under the least sophisticated consumer standard. "[T]he courts consider 'how the least sophisticated consumer—one not having the astuteness of a 'Philadelphia lawyer' or even the sophistication of the average, everyday, common consumer—understands the notice he or she receives." *Kalebaugh v. Berman & Rabin, P.A.*, 43 F. Supp. 3d 1215, 1220 (D. Kan. 2014) (quoting *Ferree v. Marianos*, 129 F.3d 130, 1997 WL 687693, at *1 (10th Cir. Nov. 3, 1997); *see also Clomon v. Jackson*, 988 F.2d 1314, 1318 (2d Cir. 1993) ("The basic purpose of the 'least-sophisticated consumer' standard is to ensure that the FDCPA protects all consumers, the gullible as well as the shrewd.").

## PARTIES

11. Plaintiff is a natural person who at all relevant times resided in the State of Kansas, County of Riley, and City of Manhattan.

12. Plaintiff is a "consumer" as defined by 15 U.S.C. § 1692a(3).

13. Defendant is an entity who at all relevant times was engaged, by use of the mails and telephone, in the business of attempting to collect a "debt" from Plaintiff, as defined by 15 U.S.C. § 1692a(5).

14. Defendant is a "debt collector" as defined by 15 U.S.C. § 1692a(6).

## FACTUAL ALLEGATIONS

15. Plaintiff is a natural person allegedly obligated to pay a debt.

16. Plaintiff's alleged obligation arises from a transaction in which the money, property, insurance, or services that are the subject of the transaction were incurred primarily for personal, family, or household purposes—namely, for personal education (the "Debt").

17. Defendant uses instrumentalities of interstate commerce or the mails in a business the principal purpose of which is the collection of any debts.

18. Defendant regularly collects or attempts to collect, directly or indirectly, debts owed or due, or asserted to be owed or due, another.

19. In connection with the collection of the Debt, Defendant sent Plaintiff a letter dated December 6, 2018.

20. A true and correct copy of the December 6, 2018 letter is attached as Exhibit A.

21. The December 6, 2018 letter was Defendant's initial communication with Plaintiff with respect to the Debt.

22. Defendant's December 6, 2018 letter purported to contain the notices required in an initial communication by 15 U.S.C. § 1692g(a).

23. However, the December 6, 2018 letter does not meaningfully convey the identity of the creditor to whom the Debt is owed.

24. The December 6, 2018 letter states: "Original Lender: Professional Marketing Financial Services." Exhibit A.

25. The December 6, 2018 letter implies that the original creditor is different than the current creditor, as it uses both terms within the body of the letter.

26. The December 6, 2018 letter then states: "Please be advised that the above account has been placed with our organization for collection." *Id*.

27. The December 6, 2018 letter does not specify the entity that placed the account with Defendant, or the entity that Defendant is collecting for.

28. Three addresses are listed on the December 6, 2018 letter—Plaintiff's address, Defendant's address, and the address of Defendant's payment processor. *See* Exhibit A.

29. The letter directs Plaintiff to "mail your payments to us, or utilize the MoneyGram Service referenced below." *Id.*

30. Upon receipt of Defendant's December 6, 2018 letter, Plaintiff, or the least sophisticated consumer, would be unsure if Professional Marketing Financial Services, Defendant, or some unidentified third party was the current creditor of the Debt.

31. In addition, Defendant's December 6, 2018 letter states: "If you notify this office within 30 days from receiving this notice, this office will obtain verification of this debt or obtain a copy of a judgment and mail you a copy of such judgment or verification." Exhibit A.

32. Defendant's December 6, 2018 letter fails to inform Plaintiff, or the least sophisticated consumer, that the right to verification is triggered only through written dispute. *Compare* § 1692g(a)(4), *with* Exhibit A.

33. After receiving Defendant's December 6, 2018 letter, Plaintiff sent Defendant a timely written dispute dated December 27, 2018, via certified mail.

34. Plaintiff spent additional time and money to send the dispute via certified mail.

35. Plaintiff used certified mail to ensure that Defendant received his dispute.

36. The FDCPA does not provide valid or invalid ways in which a consumer can contest their debt with a debt collector.

37. The least sophisticated consumer may dispute a debt via certified mail.

5

38. A true and correct copy of Plaintiff's December 27, 2018 written dispute and envelope are attached to this complaint as Exhibit B.

39. Plaintiff's written dispute was properly addressed to the address provided on Defendant's December 6, 2018 letter. *Compare* Exhibit A, *with* Exhibit B at 4.

40. When certified mail is sent, it can be tracked online.

41. When certified mail is sent to a P.O. Box, a notification that the certified mail is available is placed in the P.O. Box.

42. Per the USPS Tracking Results, attached as Exhibit C, the initial notice for the dispute letter was placed in Defendant's P.O. Box on January 2, 2019. *See* Exhibit C at 3.

43. If mail remains unclaimed for several days after the original notice is placed in a P.O. Box, the Post Office places additional notices instructing the recipient that certified mail is still available for pick up.

44. Plaintiff alleges, upon information and relief, that the Defendant received notice in its P.O. Box that that Plaintiff's letter was available for pick up.

45. A repeat notice was subsequently placed in Defendant's P.O. Box on January 3, 2019. *See* Exhibit C at 3.

46. Upon information and belief, Defendant received these subsequent notices in its P.O. Box that Plaintiff's letter was available for pick up.

47. Plaintiff's letter was flagged for return by the Post Office on January 19, 2019. *See* Exhibit C at 2.

48. The Post Office marked it as "Return to Sender," "Unclaimed," and "Unable to Forward." *See* Exhibit B at 4.

49.     The Post Office returned Plaintiff's dispute letter back to his mailbox on or about January 21, 2019.

50.     By the time Plaintiff received notice that Defendant did not claim his dispute letter, the 30-day period from Plaintiff's receipt of Defendant's December 6, 2018 letter had lapsed.

51.     Despite multiple notices of the availability of the mail, Defendant did not claim Plaintiff's dispute at any time during the 17 days it was available for pick up.

52.     Upon information and belief, no exigent circumstance existed that prevented Defendant from claiming the certified mail.

53.     Upon information and belief, Defendant has a pattern and practice of not claiming certified mail.

54.     As a debt collector, Defendant should be aware that at least a portion of the certified mail it receives would be from consumers disputing their debts.

55.     Upon information and belief, Defendant is aware of the right of a consumer to dispute debts as provided by the FDCPA.

56.     Plaintiff's dispute was timely sent under the FDCPA, despite Defendant's refusal to claim the dispute.

57.     The least sophisticated consumer may assume, when certified mail is sent to a valid address, it will be delivered.

58.     The least sophisticated consumer may assume, when mail is returned marked "Return to Sender," "Unclaimed," and "Unable to Forward" that the address provided by Defendant was not correct.

59. The least sophisticated consumer may assume, when mail is returned marked "Return to Sender," "Unclaimed," and "Unable to Forward," that any future communication with Defendant at the listed address would be fruitless.

60. When correspondence from the provided address is returned and not delivered, to the provided address, the least sophisticated consumer may assume that the initial letter was fraudulent correspondence.

61. Defendant's acts misled Plaintiff regarding his ability to dispute the Debt.

62. Defendant's acts misled Plaintiff regarding the validity of the Debt and the legitimacy of Defendant's business, as it appeared the Defendant had provided Plaintiff with a faulty or fake address.

63. Defendant's choosing not to pick up the mail when notified that it was available, is a volitional act to refuse the mail.

64. Defendant chose to refuse a legitimate method communication that the least sophisticated consumer might use to communicate with Defendant.

### CLASS ALLEGATIONS

65. Plaintiff repeats and re-alleges the factual allegations in paragraph 15 through 32 above.

66. Defendant's December 6, 2018 letter is based on a form or template used to send collection letters (the "Template").

67. Defendant has used the Template to send collection letters to over 40 individuals in the State of Kansas within the year prior to the filing of the original complaint in this matter.

68. Plaintiff brings this action on behalf of himself and all others similarly situated. Specifically, Plaintiff seeks to represent the following class of individuals:

> All persons with a Kansas address to whom Defendant sent a letter based on the Template within one year before the date of the original Complaint in connection with the collection of a consumer debt.

69. The class is averred to be so numerous that joinder of members is impracticable.

70. The exact number of class members is unknown to Plaintiff at this time and can be ascertained only through appropriate discovery.

71. The class is ascertainable in that the names and addresses of all class members can be identified in business records maintained by Defendant.

72. There exists a well-defined community of interest in the questions of law and fact involved that affect the parties to be represented. These common questions of law and fact predominate over questions that may affect individual class members. Such issues include, but are not limited to: (a) the existence of Defendant's identical conduct particular to the matters at issue; (b) Defendant's violations of the FDCPA; (c) the availability of statutory penalties; and (d) attorneys' fees and costs.

73. Plaintiff's claims are typical of those of the class he seeks to represent.

74. The claims of Plaintiff and of the class originate from the same conduct, practice, and procedure on the part of Defendant. Thus, if brought and prosecuted individually, the claims of the members of the class would require proof of the same material and substantive facts.

75. Plaintiff possesses the same interests and has suffered the same injuries as each class member. Plaintiff asserts identical claims and seeks identical relief on behalf of the unnamed class members.

76. Plaintiff will fairly and adequately protect the interests of the class and has no interests adverse to or which directly and irrevocably conflict with the interests of other members of the class.

77. Plaintiff is willing and prepared to serve this Court and the proposed class.

78. The interests of Plaintiff are co-extensive with and not antagonistic to those of the absent class members.

79. Plaintiff has retained the services of counsel who are experienced in consumer protection claims, as well as complex class action litigation, will adequately prosecute this action, and will assert, protect and otherwise represent Plaintiff and all absent class members.

80. Class certification is appropriate under Fed. R. Civ. P. 23(b)(1)(A) and 23(b)(1)(B). The prosecution of separate actions by individual members of the class would, as a practical matter, be dispositive of the interests of other members of the class who are not parties to the action or could substantially impair or impede their ability to protect their interests.

81. The prosecution of separate actions by individual members of the class would create a risk of inconsistent or varying adjudications with respect to individual members of the class, which would establish incompatible standards of conduct for the parties opposing the classes. Such incompatible standards of conduct and varying adjudications, on what would necessarily be the same essential facts, proof and legal theories, would also create and allow the existence of inconsistent and incompatible rights within the class.

82. Class certification is appropriate under Fed. R. Civ. P. 23(b)(2) in that Defendant has acted or refused to act on grounds generally applicable to the class, making final declaratory or injunctive relief appropriate.

83. Class certification is appropriate under Fed. R. Civ. P. 23(b)(3) in that the questions of law and fact that are common to members of the class predominate over any questions affecting only individual members.

84. Moreover, a class action is superior to other methods for the fair and efficient adjudication of the controversies raised in this Complaint in that: (a) individual claims by the class members will be impracticable as the costs of pursuit would far exceed what any one plaintiff or class member has at stake; (b) as a result, very little litigation has commenced over the controversies alleged in this Complaint and individual members are unlikely to have an interest in prosecuting and controlling separate individual actions; and (c) the concentration of litigation of these claims in one forum will achieve efficiency and promote judicial economy.

## CLASS COUNTS

### COUNT I
### VIOLATION OF 15 U.S.C. § 1692g(a)(2)

85. Plaintiff repeats and re-alleges each factual allegation above.

86. A key provision of the FDCPA is § 1692g, which requires a debt collector to send, within five days of its initial communication with a consumer, a written notice which provides information regarding the debt and informs the consumer of his or her right to dispute the validity of the debt, and/or request the name and address of the original creditor, within 30 days of receipt of the notice. *See* 15 U.S.C. § 1692g(a).

87. Congress adopted "the debt validation provisions of section 1692g" to guarantee that consumers would receive "adequate notice" of their rights under the FDCPA. *Wilson v. Quadramed Corp.,* 225 F.3d 350, 354 (3d Cir. 2000) (citing *Miller v. Payco–General Am. Credits, Inc.,* 943 F.2d 482, 484 (4th Cir. 1991)).

88. "Viewed from the perspective of the least sophisticated consumer, the Validation Notice must effectively convey the identity of the creditor." *Youssofi v. CMRE Fin. Servs., Inc.*, No. 15CV2310 JM(WVG), 2016 WL 4098312, at *3 (S.D. Cal. Aug. 2, 2016).

89. "Merely including the current creditor's name in a debt collection letter, without more, is insufficient to satisfy 15 U.S.C. § 1692g(a)(2)." *McGinty v. Prof'l Claims Bureau, Inc.*, No. 15CV4356SJFARL, 2016 WL 6069180, at *4 (E.D.N.Y. Oct. 17, 2016); *see Datiz v. Int'l Recovery Assocs., Inc.*, No. 15-CV-3549, 2016 WL 4148330, at *11 (E.D.N.Y. Aug. 4, 2016) ("[A] debt collector cannot satisfy Section 1692g(a)(2) by naming an entity without explicitly or implicitly making clear in the letter that the entity is the debtor's current creditor to whom a debt is owed.").

90. Defendant violated 15 U.S.C. § 1692g(a)(2) by failing to meaningfully convey the name of the creditor to whom the Debt is owed in its initial communication or in writing within five days thereafter.

WHEREFORE, Plaintiff prays for relief and judgment, as follows:

a) Determining that this action is a proper class action, certifying Plaintiff as class representative under Rule 23 of the Federal Rules of Civil Procedure, and designating this Complaint the operable complaint for class purposes;

b) Adjudging that Defendant violated 15 U.S.C. § 1692g(a)(2) with respect to Plaintiff and the class he seeks to represent;

c) Awarding Plaintiff and the class he seeks to represent actual damages, pursuant to 15 U.S.C. § 1692k(a)(1);

d) Awarding Plaintiff such additional damages as the Court may allow in the amount of $1,000, pursuant to 15 U.S.C. § 1692k(a)(2)(B)(i);

e) Awarding such amount as the Court may allow for all other class members, without regard to a minimum individual recovery, not to exceed the lesser of $500,000 or one percent of the net worth of the debt collector, pursuant to 15 U.S.C. § 1692k(a)(2)(B)(ii);

f) Awarding Plaintiff and the class he seeks to represent reasonable attorneys' fees and costs incurred in this action, pursuant to 15 U.S.C. § 1692k(a)(3);

g) Awarding Plaintiff and the class he seeks to represent any pre-judgment and post-judgment interest as permissible under the law; and

h) Awarding such other and further relief as the Court may deem just and proper.

## COUNT II
## VIOLATION OF 15 U.S.C. § 1692g(a)(4)

91. Plaintiff repeats and re-alleges each factual allegation above.

92. "[W]hen the statute's language is plain, the sole function of the courts—at least where the disposition required by the text is not absurd—is to enforce it according to its terms." *Camacho v. Bridgeport Fin. Inc.*, 430 F.3d 1078, 1081 (9th Cir. 2005) (quoting *Lamie v. United States Trustee*, 540 U.S. 526, 534 (2004) (internal quotation marks and citations omitted)).

93. For example, "a debt collector's failure to include the 'in writing' requirement violates subsections (a)(4) and (5) of Section 1692g." *Bicking v. Law Offices of Rubenstein & Cogan*, 783 F. Supp. 2d 841, 844–45 (E.D. Va. 2011) (collecting cases); *see also Camacho v. Bridgeport Fin. Inc.*, 430 F.3d 1078, 1081 (9th Cir. 2005) ("The plain meaning of § 1692g is that debtors can trigger the rights under subsection (a)(3) by either an oral or written 'dispute,' while debtors can trigger the rights under subsections (a)(4) and (a)(5) only through written dispute."); *McCabe v. Crawford & Co.*, 272 F. Supp. 2d 736, 742 (N.D. Ill. 2003) ("[O]mitting

the words 'in writing' was a violation of § 1692g(a)."); *Grief v. Wilson, Elser, Moskowitz, Edelman & Dicker, LLP,* 217 F.Supp.2d 336, 340 (E.D.N.Y. 2002) (same).

94. Another consideration when reading a statute is that "we must not 'look merely to a particular clause,' but consider 'in connection with it the whole statute.'" *Dada v. Mukasey*, 554 U.S. 1, 16, 128 S. Ct. 2307, 2317, 171 L. Ed. 2d 178 (2008) (quoting *Kokoszka v. Belford,* 417 U.S. 642, 650, 94 S.Ct. 2431, 41 L.Ed.2d 374 (1974)); *see also United States v. Heirs of Boisdore,* 8 How. 113, 122, 12 L.Ed. 1009 (1850) ("[W]e must not be guided by a single sentence or member of a sentence, but look to the provisions of the whole law, and to its object and policy").

95. Defendant violated 15 U.S.C. § 1692g(a)(4) by failing to meaningfully convey that a dispute of the Debt, or any portion thereof, must be made in writing in order to obtain verification of the alleged debt or a copy of a judgment.

WHEREFORE, Plaintiff prays for relief and judgment, as follows:

a) Determining that this action is a proper class action, certifying Plaintiff as class representative under Rule 23 of the Federal Rules of Civil Procedure, and designating this Complaint the operable complaint for class purposes;

b) Adjudging that Defendant violated 15 U.S.C. § 1692g(a)(4) with respect to Plaintiff and the class he seeks to represent;

c) Awarding Plaintiff and the class he seeks to represent actual damages, pursuant to 15 U.S.C. § 1692k(a)(1);

d) Awarding Plaintiff such additional damages as the Court may allow in the amount of $1,000, pursuant to 15 U.S.C. § 1692k(a)(2)(B)(i);

    e) Awarding such amount as the Court may allow for all other class members, without regard to a minimum individual recovery, not to exceed the lesser of $500,000 or one percent of the net worth of the debt collector, pursuant to 15 U.S.C. § 1692k(a)(2)(B)(ii);

    f) Awarding Plaintiff and the class he seeks to represent reasonable attorneys' fees and costs incurred in this action, pursuant to 15 U.S.C. § 1692k(a)(3);

    g) Awarding Plaintiff and the class he seeks to represent any pre-judgment and post-judgment interest as permissible under the law; and

    h) Awarding such other and further relief as the Court may deem just and proper.

## **INDIVIDUAL COUNTS**

### COUNT III
### VIOLATION OF 15 U.S.C. § 1692f

96. Plaintiff repeats and re-alleges each factual allegation contained above.

97. The FDCPA prohibits the use of unfair or unconscionable means to collect debts. *See* 15 U.S.C. § 1692f.

98. In addition to the non-exhaustive list of conduct that violates the FDCPA, § 1692f "allows a court to sanction improper conduct the FDCPA fails to address specifically." *Turner v. Professional Recovery Services, Inc.*, 956 F. Supp. 2d 573, 580 (D.N.J. 2013) (quoting *Adams v. Law Offices of Stuckert & Yates*, 926 F. Supp. 521, 528 (E.D. Pa. 1996)).

99. Defendant has a pattern and practice of refusing to claim certified mail.

100. Defendant's pattern and practice of refusing to claim certified mail was an attempt to prevent Plaintiff from making a timely dispute.

101. The FDCPA does not prohibit consumers from sending certified mail when disputing debt.

102. Because the least sophisticated consumer could, and because many consumers would, choose to send their dispute of a debt via certified mail, Defendant must accept and acknowledge certified mail.

103. Defendant's pattern and practice of refusing to claim certified mail is unfair and unconscionable as it prevents consumers from making timely disputes.

104. Defendant's refusal to claim certified mail from Plaintiff was unfair and unconscionable as it made it impossible to make a timely dispute.

105. Defendant's pattern and practice of refusing to claim certified mail is unfair and unconscionable as it misleads consumers as to the address of the Defendant.

106. Defendant's pattern and practice of refusing to claim certified mail is unfair and unconscionable, as mail being returned to the address Defendant provides misleads consumers as to the validity of their debt and the legitimacy of Defendant's business.

107. Defendant's pattern and practice of refusing to claim certified mail is unfair and unconscionable, as the least sophisticated consumer may determine that the address was fake and communications from the debt collector are fraudulent or a scam.

108. Defendant's pattern and practice of refusing to claim certified mail is unfair and unconscionable, as Defendant is not permitted to reject a form of communication the least sophisticated consumer might use to communicate with Defendant.

109. Defendant's unfair and unconscionable practice of not claiming certified mail violates 15 U.S.C. § 1692f.

WHEREFORE, Plaintiff prays for relief and judgment, as follows:

a) Adjudging that Defendant violated 15 U.S.C. § 1692f;

b) Awarding Plaintiff statutory damages, pursuant to 15 U.S.C. § 1692k(a)(2)(A), in the amount of $1,000.00;

c) Awarding Plaintiff actual damages, pursuant to 15 U.S.C. § 1692k(a)(1);

d) Awarding Plaintiff reasonable attorneys' fees and costs incurred in this action pursuant to 15 U.S.C. § 1692k(a)(3);

e) Awarding Plaintiff pre-judgment and post-judgment interest as permissible by law; and

f) Awarding such other and further relief as the Court may deem proper.

## COUNT IV
## VIOLATION OF 15 U.S.C. § 1692e

110. Plaintiff repeats and re-alleges each factual allegation contained above.

111. The FDCPA creates a broad, flexible prohibition against the use of misleading, deceptive, or false representations in the collection of debts. *See* 15 U.S.C. § 1692e; *Hamilton v. United Healthcare of Louisiana, Inc*., 310 F.3d 385, 392 (5th Cir. 2002) (citing legislative history reference to the FDCPA's general prohibitions which "will enable the courts, where appropriate, to proscribe other improper conduct which is not specifically addressed").

112. Defendant violated 15 U.S.C. § 1692e by using false, deceptive, or misleading representations or means in connection with the collection of the Debt.

WHEREFORE, Plaintiff prays for relief and judgment, as follows:

a) Adjudging that Defendant violated 15 U.S.C. § 1692e;

b) Awarding Plaintiff statutory damages, pursuant to 15 U.S.C. § 1692k(a)(2)(A), in the amount of $1,000.00;

c) Awarding Plaintiff actual damages, pursuant to 15 U.S.C. § 1692k(a)(1);

d) Awarding Plaintiff reasonable attorneys' fees and costs incurred in this action pursuant to 15 U.S.C. § 1692k(a)(3);

e) Awarding Plaintiff pre-judgment and post-judgment interest as permissible by law; and

f) Awarding such other and further relief as the Court may deem proper.

## TRIAL BY JURY

113. Plaintiff is entitled to and hereby demands a trial by jury. Plaintiff requests that trial be held in Kansas City, Kansas.

Dated: May 17, 2019

Respectfully submitted,

/s/ Anthony LaCroix
Anthony LaCroix
KS Bar No. 24279
406 W. 34th Street, Suite 810
Kansas City, MO 64111
Telephone:  (816) 399-4380
Fax:  (816) 399-4380
Email:  tony@lacroixlawkc.com
Attorney for Plaintiff

Correspondence Address:
Thompson Consumer Law Group, PLLC
5235 E. Southern Ave., D106-618
Mesa, AZ 85206